No. 23-12111-J

# In the United States Court of Appeals for the Eleventh Circuit

---

JOHN CASTRO,
*Plaintiff-Appellant*,

versus

DONALD J. TRUMP,
*Defendant-Appellee.*

---

On appeal from the Southern District of Florida
Case No. 9:23-cv-80015-AMC
Hon. Aileen M. Cannon, U.S. District Judge

---

## DEFENDANT-APPELLEE'S RESPONSE BRIEF

---

JESSE R. BINNALL
JARED J. ROBERTS
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
(703) 888-1943

*Counsel for Defendant-Appellee*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Defendant-Appellee Donald Trump files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Binnall, Jesse

Cannon, Hon. Aileen M.

Castro, John

Donald J. Trump for President 2024, Inc.

Halligan, Lindsey R.

Roberts, Jared

Trump, Donald J. Trump

No publicly traded corporation or company has an interest in the outcome of this case or appeal.

i

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee believes oral argument would not assist the Court in deciding the issues presented by this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................ i

STATEMENT REGARDING ORAL ARGUMENT ........................................... ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION 1

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF THE CASE ............................................................... 2

SUMMARY OF THE ARGUMENT .......................................................... 4

ARGUMENT ................................................................................... 6

     I.      Appellant Lacks Standing. ..................................................... 6

            a.    Appellant does not have the requisite concrete or particularized injury. ....................................................... 8

            b.    Appellant's alleged injuries are not fairly traceable to President Trump, nor are they redressable. .............................. 13

     II.     Appellant Presents a Nonjusticiable Political Question. ................. 15

     III.    Even If It Could Properly Be Considered, This Dispute Is Not Ripe. .................................................................................. 21

     IV.    Appellant's Argument For Disqualification Of The District Judge Is Frivolous. ............................................................. 23

CONCLUSION ................................................................................. 25

CERTIFICATE OF COMPLIANCE ........................................................ 26

CERTIFICATE OF SERVICE ............................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Gardner,*

    387 U.S. 136, 148 (1967) ............................................................................ 21, 22

*Aktepe v. United States,*

    105 F.3d 1400, 1402–03 (11th Cir.1997) ............................................................ 16

*Allen v. Wright,*

    468 U.S. 737, 750 (1984) .................................................................................... 7

***Baker v. Carr,*** 369 U.S. 186 (1962) ........................................................................ 16

*Barnett v. Obama,*

    No. SACV09-0082 DOC(ANX), 2009 WL 3861788, at *14 (C.D. Cal. Oct. 29,

    2009), *order clarified,* No. SA CV 09-0082 DOC, 2009 WL 8557250 (C.D. Cal. Dec.

    16, 2009), and *aff'd sub nom. Drake v. Obama,* 664 F.3d 774 (9th Cir. 2011) .............

    .................................................................................................... 18, 20, 21

***Bell Atl. Corp. v. Twombly,***

    550 U.S. 544, 545 (2007) .................................................................................... 8

*Berg v. Obama,*

    586 F.3d 234, 239 (3d Cir. 2009) ................................................................. 13, 18

*Caplan, et al. v. Trump,*

    No. 0:23-cv-61628, (S.D. Fla. August 24, 2023) ................................................. 4, 13

*Carmichael v. Kellogg, Brown & Root Servs., Inc.,*

    572 F.3d 1271, 1280 (11th Cir. 2009) ................................................................. 15

*Castro v. FEC,*

    No. 1:22-cv-00369 (D.D.C. Feb. 11, 2022) ........................................................ 2

*Castro v. FEC,*

    No. 1:22-cv-02176, 2022 WL 17976630 (D.D.C. Dec. 6, 2022) ...................... 2, 6

*Cheffer v. Reno,*

    55 F.3d 1517, 1524 (11th Cir. 1995) ................................................................. 22

*Clapper v. Amnesty Intern. USA,*

    568 U.S. 398, 409 (2013) ................................................................................... 9

*Digital Props., Inc. v. City of Plantation,*

    121 F.3d 586, 590 (11th Cir. 1997) ................................................................... 22

*Giles v. Garwood,*

    853 F.2d 876, 878 (11th Cir. 1988) ................................................................... 4

*Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC,*

    26 F.4th 1235, 1240 (11th Cir. 2022) ............................................................... 8

*Golden v. Zwickler,*

    394 U.S. 103, 108 (1969) ............................................................................... 9, 10

*Grinols v. Electoral College,*

    2013 WL 2294885, *7 (E.D. Cal. May 23, 2013)................................. 18

*In re Cargill, Inc.,*

    66 F.3d 1256, 1262–63 (1st Cir. 1995) .................................. 24

*In re Kansas Pub. Emps. Ret. Sys.,*

    85 F.3d 1353, 1360 (8th Cir. 1996) .................................. 24

*Kerchner v. Obama,*

    612 F.3d 204, 207 (3d Cir. 2010) .................................. 13

*\*Liteky v. United States,*

    510 U.S. 540, 555 (1994)................................. 23

*\*Lujan v. Defenders of Wildlife,*

    504 U.S. 555, 561 (1992)........................... 7, 8, 9, 11

*Made in the USA Found. v. United States,*

    242 F.3d 1300, 1312 (11th Cir.2001) .................................. 15

*Massachusetts v. E.P.A.,*

    549 U.S. 497, 516 (2007)................................. 15

*Md. Casualty Co. v. Pacific Coal & Oil Co.,*

    312 U.S. 270, 273 (1941).................................. 9

*Nat'l Park Hospitality Ass'n v. DOI,*

    538 U.S. 803, 808 (2003)............................... 21, 22

*Nixon v. United States,*

　506 U.S. 224, 228 (1993) ................................................................. 17

*Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard Tanker*

　*Dauntless Colocotronis,*

　577 F.2d 1196, 1203 (5th Cir.1978) ................................................ 15

*Papasan v. Allain,*

　478 U.S. 265, 286 (1986) ................................................................... 8

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock,*

　993 F.2d 800, 805 (11th Cir. 1993) ................................................... 7

*Reno v. Catholic Soc. Serv., Inc.,*

　509 U.S. 43, 57 n. 18 (1993) ............................................................ 21

*Robinson v. Bowen,*

　567 F. Supp. 2d 1144, 1147 (N.D. Cal. 2008) ....................... 18, 19, 20

*Schlesinger v. Reservists Comm. to Stop the War,*

　418 U.S. 208, 221-22 (1974) ........................................................... 12

*Sherley v. Sebelius,*

　610 F.3d 69, 72 (D.C. Cir. 2010) ..................................................... 12

*Smith v. Shook,*

　237 F.3d 1322, 1324 (11th Cir. 2001) ............................................... 4

*State Nat'l Bank of Big Spring v. Lew*,

    795 F.3d 48, 55 (D.C. Cir. 2015)...................................................................... 12

*Taitz v. Democrat Party of Mississippi*,

    2015 WL 11017373, *16 (S.D. Miss. Mar. 31, 2015)..................................... 19

*Texas v. United States*,

    523 U.S. 296, 300 (1998)............................................................................ 20, 21

*Thomas v. Union Carbide Agric. Prod. Co.*,

    473 U.S. 568, 581 (1985)................................................................................... 21

*TV Commc'n Network, Inc. v. ESPN, Inc.*,

    767 F. Supp. 1077, 1081 (D. Colo. 1991)....................................................... 24

*United States v. Kelly*,

    888 F.2d 732, 744 (11th Cir. 1989) ................................................................. 24

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,

    529 U.S. 765, 772 (2000) ................................................................................... 8

## United States Constitution

U.S. CONST., amend. XIV, § 3 ............................................................................... 3

U.S. CONST., amend. XX ...................................................................................... 24

## Statutes

3 U.S.C. § 15............................................................................................................. 3

### Other Authorities

*Candidates*, FEDERAL ELECTION COMMISSION, https://www.fec.gov/data/candidates/?election_year=2024&office=P (last visited Aug. 8, 2023). ............................................................................................. 10

*Political Primaries: How Are Candidates Nominated?*, LIBRARY OF CONGRESS, https://www.loc.gov/classroom-materials/elections/presidential-election-process/political-primaries-how-are-candidates-nominated/(last visited Aug. 11, 2023) ............................................................................................. 22

## STATEMENT OF SUBJECT MATTER AND APPELLATE

## JURISDICTION

Jurisdiction for this civil action was improper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1331 because Appellant John Anthony Castro lacks standing. The district court properly entered final judgment against Appellant as to all his claims on June 26, 2023, because of Appellant's lack of standing. On June 26, 2023, Appellant filed a timely notice of appeal.

Jurisdiction in this Court is proper to the extent that it is the correct court to hear this appeal. Yet, this Court also lacks subject matter jurisdiction as Appellant continues to lack standing and presents a political question.

## STATEMENT OF THE ISSUES

1. Whether Appellant lacks standing as concluded by the district court.

2. Whether Judge Cannon was required to disqualify herself from Appellant's case.

## STATEMENT OF THE CASE

### 1. Factual Background

Appellant states that he has registered with the Federal Election Commission ("FEC" or "Commission") to run as a candidate for President of the United States. Appellant's Appendix ("AA") at Pg. 35, ¶ 2. Appellant claims that because he has done this simple task, he has standing to disqualify President Trump from being a presidential candidate. This is incorrect.

On February 10, 2022, Appellant filed a supplementary complaint against the FEC challenging the Commission's alleged failure to act on an administrative complaint that Appellant alleged he mailed to the FEC. *Castro v. FEC*, No. 1:22-cv-00369 (D.D.C. Feb. 11, 2022), ECF 1. After he was told that the complaint never arrived, Appellant voluntarily dismissed that complaint. *See* Pl's Mot. to Dismiss Without Prejudice, *Castro v. FEC*, No. 1:22-cv-00369 (D.D.C. 2022), ECF 3. Then, on March 23, 2022, Appellant filed a second administrative complaint with the FEC.

On July 25, 2022, Appellant filed a second complaint against the FEC relating to his March 23 administrative complaint to the Commission. *See Castro v. FEC*, No. 1:22-cv-02176, 2022 WL 17976630 at *1 (D.D.C. Dec. 6, 2022). Appellant sought "declaratory and injunctive relief against the [FEC] concerning Donald J. Trump's candidacy for President of the United States," and sought an order compelling the agency to "reject [President Trump's] statement of candidacy based on the Fourteenth Amendment's Disqualification Clause." *Castro v. FEC*, 2022 WL 17976630 at * 1 (D.D.C. Dec. 6, 2022); *see* U.S. CONST., amend. XIV, § 3.

Appellant alleged that he would suffer a competitive injury if President Trump were permitted to run because Appellant would have to compete with him for campaign funds. *Id.* at *2.

On December 6, 2022, following briefing by the parties, the D.C. district court granted the FEC's motion to dismiss, concluding that Appellant lacked standing to sue. *Id.* at *3. Appellant then filed an almost identical complaint in the District Court for the Southern District of Florida, this time against President Trump himself. Appellant's initial Complaint was dismissed *sua sponte* as a shotgun pleading. Doc. 6. In his Amended Complaint, Appellant asserted two claims for relief against President Trump. Specifically, Appellant requested that the district court declare President Trump constitutionally ineligible to hold public office because of the events of January 6, 2021, and enjoin President Trump from submitting an application to appear on any State's ballot. AA at Pg. 37, ¶¶ 11–12.

## 2. Prior Proceedings

On February 15, 2023, President Trump filed his motion to dismiss Appellant's claims, and Appellant filed a frivolous motion to disqualify Judge Aileen Cannon simply because she once ruled in favor of President Trump in another case. AA at pp. 53–78. The next day, Judge Cannon properly denied Appellant's motion. AA at p. 80. On June 23, 2023, the district court granted President Trump's motion to dismiss, finding that Appellant lacked standing, and the case was not ripe. AA at pp. 134–35. Appellant timely appealed, and on July 14, 2023, he filed his opening brief.

### 3. Standard of Review

This Court reviews Appellant's lack of standing de novo, *Smith v. Shook*, 237 F.3d 1322, 1324 (11th Cir. 2001), and the denial of the disqualification motion for abuse of discretion. *Giles v. Garwood*, 853 F.2d 876, 878 (11th Cir. 1988).

## SUMMARY OF THE ARGUMENT

Appellant seeks to revive a meritless case. From the outset, Appellant has lacked standing to bring this case, as he has lacked standing to bring previous cases in the same vein. Two courts have now seen through Appellant's argument and held that he does not have standing to bring a case to disqualify President Trump from either fundraising or being a candidate for President of the United States of America. Moreover, another court in this circuit found that a group of voters also lacked standing to sue for President Trump's disqualification from the ballot. *Caplan v. Trump*, No. 0:23-cv-61628 (S.D. Fla. Aug. 31, 2023).

Appellant has continuously failed to demonstrate that he suffers from a concrete or particularized injury that is fairly traceable to President Trump, nor has he shown that this Court even has the power to redress his alleged grievance, if it exists. Appellant's alleged injuries are wholly speculative; he flatly asserts that if President Trump were not a candidate for President, then President Trump's support would instead go to Appellant, who according to FEC filings has not raised

4

a single dollar and is one of hundreds of candidates that filed with the FEC for the Republican nomination.

Moreover, what Appellant is asking the courts to do—find that President Trump is in violation of Section 3 of the Fourteenth Amendment and is therefore ineligible to run for President of the United States—has never before been done by an Article III court. It is the definition of a political question. This is especially true and critical to this case since President Trump has already been acquitted of these claims in the United States Senate during his impeachment proceeding, by the political branch.

Finally, Appellant is attempting to manipulate the disqualification requirements simply because he is unhappy with the judge assigned to this case. There is nothing to suggest that Judge Cannon displayed any favoritism toward President Trump. That this Court previously overruled Judge Cannon in a completely unrelated case involving President Trump is not grounds for disqualification. The holding that Appellant seeks would wreak havoc on our judicial system.

President Trump, therefore, respectfully requests that this Court affirm the district court's decisions in their entirety.

# ARGUMENT

## I.    Appellant Lacks Standing.

Appellant has already lost this case in another jurisdiction against another defendant. *See Castro v. FEC*, No. 1:22-cv-02176, 2022 WL 17976630 (D.D.C. Dec. 6, 2022) ("*Castro I*"). In *Castro I*, Appellant sought declaratory and injunctive relief compelling the FEC to reject President Trump's candidacy based on the Fourteenth Amendment. *Castro I*, 2022 WL 17976630, at * 1. Appellant alleged that he would suffer a competitive injury if President Trump were permitted to run because Appellant would have to compete with him for campaign funds. *Id*. at *2. The District Court for the District of Columbia ("DDC"), however, found that Appellant lacked standing to sue. *Id*. at *3. Specifically, the DDC found that Appellant's alleged injury was not traceable to the FEC because the agency had no authority to reject President Trump's statement of candidacy or to determine constitutional eligibility for office. *Id*. at *2. Further, the court concluded that Appellant's alleged injury was not redressable because the court could not compel the FEC to engage in a gatekeeping function that exceeded the agency's scope of authority, and the filing of a statement of candidacy does not confer any authorization to run for office. *Id*. at *3.

After the FEC's motion to dismiss was granted, Appellant filed a nearly identical complaint against President Trump in the Southern District of Florida. In

the case below, Appellant repurposed his arguments in *Castro I* against President Trump, requesting the Southern District of Florida perform the gatekeeping function and find that President Trump is ineligible to run for President of the United States. Appellant's initial Complaint was dismissed by the Southern District of Florida *sua sponte* as a shotgun pleading. Doc. 6. After he filed his Amended Complaint, Appellant's case was again dismissed for lack of standing. AA at pp. 134–35.

"A central component of Article III's 'case or controversy' requirement is that the litigant must have standing to invoke the power of the federal court." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805 (11th Cir. 1993) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [the standing] elements."). To establish standing, "a plaintiff must satisfy three constitutional requirements." *Region 8*, 993 F.2d at 805. First, a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id*. "An interest unrelated to injury in fact is insufficient

to give a plaintiff standing." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561.

In determining whether to dismiss a complaint for lack of standing, the court must "accept as true the allegations in the complaint . . . and draw all reasonable inferences in favor of the plaintiff[]." *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022). Despite this, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). It is well established that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*

### a.   **Appellant does not have the requisite concrete or particularized injury.**

Appellant has not identified a concrete or particularized injury sufficient to confer standing to seek declaratory relief against President Trump. As is well established, "a plaintiff raising only a generally available grievance about

government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74. Indeed, a plaintiff's injury must be "certainly impending to constitute injury in fact," and "[a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013).

The Supreme Court has explained that the difference between a "concrete" claim for a declaratory judgment (reviewable by a federal court) and an "abstract" claim (not reviewable) "is necessarily one of degree." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *Md. Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*.

Here, Appellant believes that he can manufacture standing by registering with the FEC as a presidential candidate. Currently, there are 292 candidates registered

with the FEC for the Republican Primary.[1] In his Amended Complaint, Appellant admitted that he has not registered with any state to run for President, noting "the seemingly most appropriate time to bring suit would be when Plaintiff Castro and Defendant Trump both file paperwork in New Hampshire, Pennsylvania, Georgia, and Arizona to appear on the ballot as Presidential candidates . . . ." AA at pp. 39–40, ¶ 20. Thus, all Appellant has done to try to establish candidacy is file a form with the FEC. In truth, only a few of these FEC registered "candidates" will actually launch a true Presidential campaign. Appellant, despite his protestations about the legitimacy of his campaign, has not received a single donation according to his FEC records.

Moreover, Appellant does not appear on any national polls, nor has he qualified for the Republican Party presidential debate. Indeed, there is nothing to suggest that Appellant's candidacy is "real" or "immediate." *See Golden*, 394 U.S. at 109–10 (holding that assertions that someone could be a candidate for office "was neither real nor immediate" enough to confer standing). Just because Appellant repeatedly claims that he is running for president and is pursuing frivolous legal

---

[1]  *Candidates*, FEDERAL ELECTION COMMISSION, https://www.fec.gov/data/candidates/?election_year=2024&office=P (last visited Sept. 13, 2023).

remedies against President Trump does not confer standing. *See Lujan*, 504 U.S. at 560 (holding that conjectural or hypothetical injuries are not a concrete harm) (internal citations and quotations omitted).

Appellant made the conclusory allegation that he "will suffer concrete competitive injury if [President Trump's] campaign committee is permitted to raise funds," because it would put "Plaintiff at a fundraising disadvantage." AA at p. 39, ¶ 19. Appellant proceeded to claim that "[i]f the federal judiciary permits [President Trump's] campaigning, [President Trump] will be the Republican Party's presumptive nominee and completely dominate at fundraising," then consequently "[t]his will siphon off tens if not hundreds of millions of dollars to a constitutionally ineligible candidate[.]" *Id*. This is all speculative and does not meet the standing requirements enunciated by *Lujan*, particularly as Appellant fails to demonstrate with the required certainty that any of those donations would go to him instead of any of the other Republican candidates for President.

To get around this, Appellant seeks to invoke a novel application of "political competitor standing." This theory, however, applies, if at all, only in situations involving government action and not in situations that, like this one, involve private citizens. For instance, where the government controls access to a market and takes an action that either allows new entrants to the market or otherwise alters competition, courts may consider whether market participants have a competitive

11

injury. *E.g.*, *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 55 (D.C. Cir. 2015) (stating that the competitor standing doctrine provides standing in "some circumstances" to "challenge the Government's allegedly illegal under-regulation of the plaintiff's competitor"); *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (considering competitor standing with respect to government regulatory action). Appellant has identified no case where a court has extended the legal theory to actions of a private citizen, and undersigned counsel is aware of none. Instead, all of Appellant's cited cases involve action from a government body, making these cases inapposite. Accordingly, Appellant's efforts to salvage his clear lack of standing fall short.

The requirement of concrete and particularized injury is particularly critical where, as here, a plaintiff seeks "an interpretation of a constitutional provision which has never before been construed by the federal courts," and where "the relief sought produces a confrontation with one of the coordinate branches of the Government[.]" *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221-22 (1974). This is because "[t]o permit a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing 'government by injunction.'" *Id*. at 222. Here, Appellant asks this Court

to bar another private citizen from running for President of the United States—a remedy never granted by any court in this nation's history. Under these circumstances, Appellant falls far short of his burden to establish standing.

Indeed, the Southern District of Florida recently rejected a suit from other plaintiffs on similar grounds in *Caplan v. Trump*. In that case, the court held that "an individual citizen does not have standing to challenge whether another individual is qualified to hold public office." Order of Dismissal, *Caplan v. Trump*, No. 0:23-cv-61628, at 3 (S.D. Fla. August 24, 2023) (citing *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010); *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009). There, as here, the plaintiffs lacked standing, which further buttresses the conclusion that this Court should reject Appellant's attempt to manufacture standing to state a claim.

### b. Appellant's alleged injuries are not fairly traceable to President Trump, nor are they redressable.

There is nothing in the Amended Complaint to suggest that Appellant's alleged injury is fairly traceable to President Trump. Appellant complains about his lack of political support, which is no surprise as he has received no donations whatsoever according to his FEC filings. Despite his bald allegations to the contrary,[2]

---

[2] This Court need not credit or consider Appellant's claim to have spoken with "thousands" of voters that would supposedly support him if President Trump was not on the ballot. Not only is the claim itself inherently speculative of the actual

13

however, Appellant cannot trace his lack of support to President Trump or his campaign.

There is simply no support for the idea that President Trump is siphoning support away from Appellant, particularly since Appellant has received no support. Appellant has received no donations, nor has he showed any other indication that he more than any other random citizen is losing support because President Trump is the frontrunner for the Republican Party nomination. All candidates must abide by the same set of rules governing campaign finance. Appellant did not allege, and cannot allege, that President Trump has acted in any way that has prevented him from campaigning and raising money on his own.

Moreover, Appellant's alleged injuries are entirely speculative and dependent on the potential conduct of third parties. None of these allegations confer standing. Further, Appellant presents no support or cases showing that a court has ever kept a presidential candidate off the ballot using the Fourteenth Amendment. It is unclear whether this Article III court could even wade into this conflict as it involves a political question running deep into the separation of powers between the

---

intent of "thousands" of people, but it was not alleged in the Amended Complaint. Even if it had been properly alleged, the claim amounts to "someone told me something"—this Court is not required to accept that "something" to be true.

Legislative, Executive, and the Judicial branches of government. It would be inappropriate for an Article III court to determine that President Trump has committed an act that would prevent his candidacy under this provision when he has already been acquitted of similar allegations during impeachment proceedings before the United States Congress.

That is especially so in this case where, even if the Court did what Appellant asks, there is no indication that Appellant would actually receive any additional support, which shows that his requested redress would not remedy his alleged injury. As Appellant's alleged injuries would not be fixed by any of the requested relief, Appellant has entirely failed to meet his burden of demonstrating standing.

## II.    Appellant Presents a Nonjusticiable Political Question.

Political questions "have been held to be nonjusticiable and therefore not a 'case or controversy' as defined by Article III." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1280 (11th Cir. 2009) (citing *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard Tanker Dauntless Colocotronis*, 577 F.2d 1196, 1203 (5th Cir.1978); *see also Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007) ("It is therefore familiar learning that no justiciable 'controversy' exists when parties seek adjudication of a political question[.]"); *Made in the USA Found. v. United States*, 242 F.3d 1300, 1312 (11th Cir.2001) ("The political question doctrine emerges out

of Article III's case or controversy requirement and has its roots in separation of powers concerns.")).

The Supreme Court set out broad categories of decisions that should be considered a nonjusticiable political question in *Baker v. Carr*, 369 U.S. 186 (1962):

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; [2] a lack of judicially discoverable and manageable standards for resolving it; [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Aktepe v. United States*, 105 F.3d 1400, 1402–03 (11th Cir.1997).

Appellant's lawsuit fits into a number of these categories, including the lack of judicially discoverable and manageable standards for resolving it; the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; an unusual need for unquestioning adherence to a political decision already made; and the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

First, the *Baker* categories of impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of

government, an unusual need for unquestioning adherence to a political decision already made, and the potentiality of embarrassment from multifarious pronouncements by various departments on one question are all implicated by one simple fact of which this Court may take judicial notice: President Trump was impeached by the United States House of Representatives and tried for incitement of insurrection by the United States Senate *and found not guilty*.

This alone shows the potential for embarrassment if an Article III court were to even consider whether President Trump should be kept off the ballot for insurrection or rebellion. Moreover, there is no clearer example of an unusual need for unquestioning adherence to a political decision already made since the United States Senate already heard evidence and tried President Trump on a charge of insurrection and found that he was not guilty. The political branch of the United States has already tried this issue and rejected the claim that President Trump incited an insurrection. If this, or any court were to even take up this question it would be expressing a lack of respect for a coordinate branch of government.

In *Nixon v. United States*, the Supreme Court discussed why the impeachment power was ultimately given solely to the United States Congress and why that determination put matters of impeachment beyond judicial review. 506 U.S. 224, 228 (1993). While this is not directly on point in this case, as *Nixon* was about a challenge to an impeachment proceeding rather than about an impeachment

17

proceeding's finality, it is persuasive as it demonstrates how a judicial review of this issue, which was decided by the Congress already, would create inter-branch controversy. This Court, or any court, stepping in to second-guess that decision would undermine the determination of Congress.

Second, given the nature of the dispute, there is a lack of judicially discoverable and manageable standards, particularly considering the United States Senate's rejection of the claim that President Trump incited a riot. This is exactly the type of issue that is impossible to decide without an initial policy determination of a kind clearly for nonjudicial discretion. This is exemplified by the first push being through the political impeachment process rather than through a legal process.

Indeed, the Third Circuit, in an order during the appeal of the question whether then-President-elect Obama was eligible for office under the Natural Born Persons clause, found that it was a political question. *Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009).

Multiple district courts have also ruled that lawsuits by citizens challenging presidential qualifications presented non-justiciable political questions. *See e.g.*, *Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1147 (N.D. Cal. 2008); *Barnett v. Obama*, No. SACV09-0082 DOC(ANX), 2009 WL 3861788, at *11 (C.D. Cal. Oct. 29, 2009); *Grinols v. Electoral College*, 2013 WL 2294885, *7 (E.D. Cal. May 23, 2013) ("These various articles and amendments of the Constitution make clear that the

Constitution assigns to Congress, and not to federal courts, the responsibility of determining whether a person is qualified to serve as President of the United States. As such, the question presented by Plaintiffs in this case—whether President Obama may legitimately run for office and serve as President—is a political question that the Court may not answer."); and *Taitz v. Democrat Party of Mississippi*, 2015 WL 11017373, *16 (S.D. Miss. Mar. 31, 2015) ("Likewise, this court can find no authority in the Constitution which would permit it to determine that a sitting president is unqualified for office or a president-elect is unqualified to take office. These prerogatives are firmly committed to the legislative branch of our government.").

The Constitution and federal statutes, passed by Congress, speak on the manner in which the President shall be elected. *Bowen*, 567 F. Supp. at 1146-47. In *Bowen*, the court held that "mechanisms exist under the Twelfth Amendment and 3 U.S.C. § 15 for any challenge to any candidate to be ventilated when electoral votes are counted." *Id.* at 1147. And that "the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify." *Id.* Specifically, the manner of counting the electoral college votes is delineated by federal statute. *See e.g.*, 3 U.S.C. § 15. Moreover, the Twentieth Amendment provides that:

> if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring who shall then act as President,

or the manner in which one who is to act shall be elected, and such person shall act accordingly until a President or Vice President shall have qualified.

U.S. CONST., amend. XX.

These amendments to the United States Constitution and federal laws passed by Congress are "quintessentially suited" to determine "[i]ssues regarding qualifications for president." *Bowen,* 567 F. Supp. 2d. at 1147. Indeed, the *Bowen* court went so far as to hold that "this order holds that the challenge presented by plaintiff is committed under the Constitution to the electors and the legislative branch, at least in the first instance. Judicial review—if any—should occur only after the electoral and Congressional processes have run their course." *Id.* (citing *Texas v. United States,* 523 U.S. 296, 300–02 (1998).

Moreover, "[t]he Twenty–Fifth Amendment, which addresses the succession to presidency and vice presidency in the case the president is disabled ... directs that in the case where there is disagreement as to whether the President is able to discharge the powers and duties of his or her office, 'Congress shall decide the issue.'" *Barnett v. Obama*, No. SACV09-0082 DOC(ANX), 2009 WL 3861788, at *14 (C.D. Cal. Oct. 29, 2009), *order clarified,* No. SA CV 09-0082 DOC, 2009 WL 8557250 (C.D. Cal. Dec. 16, 2009), and *aff'd sub nom. Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011). Indeed, "the Twenty–Fifth Amendment sets forth the line of succession 'in case of the removal of the president from office' or in case of his or her death,

resignation, or inability to serve. The Amendment specifies a role for Congress in this process, but no role for the judiciary." *Id. a*t *15.

Taken together, these cases and the constitutional amendments and federal statutes upon which they are based demonstrate that the questions whether a candidate should be on the ballot or is able to serve as President are nonjusticiable political questions reserved for Congress, not this or any court.

### III.    Even If It Could Properly Be Considered, This Dispute Is Not Ripe.

"The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Nat'l Park Hospitality Ass'n v. DOI,* 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Soc. Serv., Inc.*, 509 U.S. 43, 57 n.18 (1993)). It is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]'" *Id*. at 807 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 581 (1985)). In determining whether an action is ripe for review, the court must "evaluate [both] the fitness of the issues for judicial decision and [] the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n,* 538

U.S. at 808 (quoting *Abbott Labs.*, 387 U.S. at 149). The claim must be "sufficiently mature" and the issues "defined and concrete." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997) (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)).

As discussed above, Appellant is not a genuine candidate at this time. A review of the Amended Complaint demonstrates that Appellant's claims are not sufficiently mature, defined, or concrete to permit the Court to grant the relief requested. Appellant even concedes this point, noting "the seemingly most appropriate time to bring suit would be when Plaintiff Castro and Defendant Trump both file paperwork in New Hampshire, Pennsylvania, Georgia, and Arizona to appear on the ballot as Presidential candidates." AA at pp. 39–40, ¶ 20.[3] As Appellant has not pled that he has taken any steps to appear on any ballots, his candidacy is wholly speculative at this point. Therefore, this dispute—even if it were otherwise cognizable (and it is not)—would not be currently ripe.

---

[3] *Political Primaries: How Are Candidates Nominated?,* LIBRARY OF CONGRESS, https://www.loc.gov/classroom-materials/elections/presidential-election-process/political-primaries-how-are-candidates-nominated/(last visited Aug. 11, 2023).

## IV. Appellant's Argument For Disqualification Of The District Judge Is Frivolous.

The case that Appellant chiefly relies on for disqualification, *Liteky*, cuts strongly against his argument for disqualification. As the Supreme Court held, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). It is very rare that a judicial ruling would "evidence the degree of favoritism or antagonism required" to force disqualification. *Id*. Judicial rulings are only a proper basis for disqualification when they display "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. Yet, all the "evidence" Appellant has claimed to be disqualifying comes from Judge Cannon's judicial acts, not extrajudicial sources.

Appellant tacitly concedes that the only evidence he can advance in support of disqualification is Judge Cannon's previous judicial rulings. His only argument for disqualification is that her judicial rulings display "deep-seated favoritism," and that this is the rare case where judicial rulings require disqualification. Appellant's Br. at 31, 35. Appellant's only alleged examples of Judge Cannon's "deep-seated favoritism" are that (1) this Court previously overruled her, just once, in a case involving President Trump, (2) that she quickly denied Appellant's motion for disqualification, and (3) that Judge Cannon took 92 days to decide his motion to dismiss. *Id*. at 31–34. This hardly displays a "deep-seated favoritism," or any favoritism for that matter.

23

Instead, it is likely that Appellant moved to disqualify Judge Cannon not out of ethical concerns but because of litigation strategy. *See In re Kansas Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1360 (8th Cir. 1996) (quoting *In re Cargill, Inc.*, 66 F.3d 1256, 1262–63 (1st Cir. 1995)) (noting that "[i]n the real world, recusal motions are sometimes driven more by litigation strategies than by ethical concerns."). Courts, however, "subscribe to the view that motions to recuse should not 'be viewed as an additional arrow in the quiver of advocates in the face of [anticipated] adverse rulings.'" *Id.* at 1360 (quoting *TV Commc'n Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1077, 1081 (D. Colo. 1991)). Further, while there is the requirement that doubts be resolved in favor of recusal, judges are still obligated to recuse only when there are proper grounds to do so. *See United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989). Just because Appellant, and some other commentators, spuriously and publicly called Judge Cannon corrupt does not manufacture a need for disqualification. Appellant's Br. at 38. Were it otherwise, the incentive for litigants and their partisans to criticize Article III judges to lay the groundwork for disqualification would be readily apparent and courts would be plagued by such concocted disqualification motions. Accordingly, it is clear that Judge Cannon did not act erroneously in declining to disqualify herself.

24

# CONCLUSION

This appeal is clearly frivolous. It is evident, based on years of caselaw, that Appellant lacks standing and that his claims are not ripe. Further, Appellant does not have a good faith argument for disqualification. Accordingly, President Trump respectfully requests that this Court uphold the district court's decisions.

Dated: September 13, 2023                Respectfully submitted,

                                         */s/ Jesse R. Binnall*
                                         Jesse R. Binnall
                                         Jared J. Roberts
                                         BINNALL LAW GROUP, PLLC
                                         717 King Street, Suite 200
                                         Alexandria, Virginia 22314
                                         Phone: (703) 888-1943
                                         Fax: (703) 888-1930
                                         jesse@binnall.com
                                         jared@binnall.com

                                         *Counsel for President Donald J. Trump*

25

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this Response complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1), as well as 11th Cir. R. 32-4 pursuant to Appellants' unopposed motion for extension and renewed motion for extension, because, excluding the parts of the Petition exempted by Federal Rule of Appellate Procedure 32(f), it contains 5,659 words.

Undersigned counsel certifies that this Response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

Dated: September 13, 2023                    Respectfully submitted,

                                             */s/ Jesse R. Binnall*
                                             Jesse R. Binnall

                                             *Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I certify that on September 13, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall

*Counsel for President Donald J. Trump*